## Steckel's Appeal.

1. The Act of April 27th 1855 (Illegitimates) does not legitimatize illegitimate children, even so far as their mother and her next of kin are concerned.

2. When a bastard dies before his mother, he cannot transmit a right from her to his children.

3. The words of the act do not extend to the possibility of a future inheritance.

4. Nothing but express words will give a statute a retrospective effect.

5. The words of the Act of 1855 are prospective.

March 22d 1870.  Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ.  READ, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Lehigh county:* No. 438, to January Term 1870.   In the estate of Susanna Steckel, deceased.

Susanna Steckel died in January 1868.   On the settlement of her estate there appeared to be in the hands of her administrator, for distribution amongst her next of kin, the sum of $1077.44.

[Steckel's Appeal.]

The distribution was referred to an auditor, before whom the claimants were William Steckel, a legitimate son of the decedent, and the widow and three children of George Getter, an illegitimate son of the decedent, born before her marriage. It appeared before the auditor that Getter had died on the 7th of December 1839, leaving his widow and three children to survive him. Under these facts the auditor awarded the whole fund to William Steckel the legitimate child.

The widow and children of Getter filed exceptions to the report of the auditor.

The Orphans' Court (Longaker, P. J.) reversed the award of the auditor, and ordered the fund to be distributed, one-half to Steckel and the other half to the representatives of Getter.

On appeal to the Supreme Court by Steckel this decree was assigned for error.

*R. E. Wright,* for appellant, cited Grubb's Appeal, 8 P. F. Smith 55; Cresoe v. Laidley, 2 Binn. 286; Miller's Appeal, 2 P. F. Smith 113; Killam v. Killam, 3 Wright 120; Opdyke's Appeal, 13 Wright 373.

*J. D. Stiles,* for appellees, referred to Grubb's Appeal, Opdyke's Appeal, *supra;* Stevenson v. Sullivant; 5 Wheat. 207.

The opinion of the court was delivered, March 28th 1870, by
SHARSWOOD, J.—By the 3d section of the Act of April 27th 1855 (Pamph. L. 368) it is provided "that illegitimate children shall take and be known by the name of their mother, and they and their mother shall respectively have capacity to take or inherit from each other personal estate as next of kin, and real estate as heirs in fee simple; and as respects said real or personal estate so taken and inherited, to transmit the same according to the intestate laws of this state."

The question which arose in Grubb's Appeal, 8 P. F. Smith 55, was whether under this act a bastard could transmit to maternal collaterals his own acquisitions as well as those inherited from his mother. I thought that, giving the words of the statute a liberal interpretation, it included the case, and that a bastard could transmit to his collaterals on the mother's side not only what he had inherited but what he had taken by purchase. The decision of the majority was otherwise. "The words of the act," said Mr. Justice Read, "are very special, confining its operation as regards the daughter to real and personal estate taken and inherited from the mother, leaving all her property derived from any other source unaffected by the Act of 1855." The case certainly establishes that the statute does not legitimatize illegitimate children, even so far as their mothers and her next of kin are

[Steckel's Appeal.]

concerned. The application of this principle requires us to hold that where a bastard dies before his mother, and therefore never has taken or inherited from her, he cannot transmit a right to his descendants which never was in him. The words certainly do not extend to a mere possibility of future inheritance. Had the legislature intended not merely that illegitimate children but the issue of illegitimate children should inherit, it would have been easy to have said so; but they seem carefully to confine the operation of the enactment to children taking from their mother, so as to exclude the case of grandchildren and grandmothers.

But the construction here contended for goes further, and would give the Act of 1855 a retrospective operation, contrary to the well-established canon that nothing but express words shall be allowed to have that effect. George Getter, the bastard, died December 7th 1839, and he had then no capacity to inherit from his mother. He had not even a possibility. How then could he transmit to his children what he had not himself? All the words of the act are prospective, and evidently were meant to apply only to cases arising subsequent to its passage.

Decree reversed, and now it is ordered and decreed that the balance in the hands of the accountant (after the payment thereout of the costs of this appeal) be paid to William Steckel.